### HAYDEL v. GOULD.

(Supreme Court, Appellate Division, First Department. February 4, 1910.)

1. CONTRACTS (§ 346*)—ACTIONS FOR BREACH—ADMISSION OF EVIDENCE—CONFORMITY TO ISSUES.

In an action for breach of an alleged contract by which plaintiff, an architect, agreed to design and sketch a house for defendant, in which defendant claimed that the agreement was that he would be under no obligation unless plaintiff's sketches met with his approval, and that plaintiff would retire if his services were not satisfactory at any time before their approval, a well-known scientific journal, containing an article on a house theretofore erected by plaintiff and an editorial commenting favorably upon his professional services in connection therewith, which journal plaintiff had shown to defendant, because it contained photographs of the house described in the article, was not admissible under the issues; the house which plaintiff was to sketch for defendant not being like that described in the article.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1718, 1719; Dec. Dig. § 346.*]

2. CONTRACTS (§ 346*)—ACTIONS FOR BREACH—ADMISSION OF EVIDENCE—CONFORMITY TO ISSUES.

Letters containing self-serving declarations tending to show plaintiff's willingness to do anything reasonable to meet defendant's views as to the construction of the house, or to amicably settle the controversy between them, were not admissible in evidence under the issues.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1718, 1719; Dec. Dig. § 346.*]

3. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE—PREJUDICIAL EFFECT.

The admission of the journal and letters was prejudicial; the effect of the article in the journal being favorable to plaintiff, as tending to recommend his professional skill.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160; Dec. Dig. § 1050.*]

Appeal from Trial Term, New York County.

Action by Abner J. Haydel against Charles A. Gould. From a judgment for plaintiff, and an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, McLAUGHLIN, and DOWLING, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Richard T. Greene, for appellant.
J. Noble Hayes, for respondent.

DOWLING, J. The plaintiff, who is an architect, claims that on or about June 4, 1904, the defendant, who was the owner of property on Long Island, entered into an agreement with the plaintiff whereby plaintiff undertook and agreed to design and make preliminary studies and sketches of a castle or country house, which the defendant was then preparing to erect upon his property, and that defendant agreed that upon the completion of the preliminary studies and sketches, if the same met with his approval, he would proceed to erect a house in accordance with such designs, and would employ plaintiff as architect at a total compensation for his services of 7½ per cent. upon the estimated cost of the building, to be paid in the following installments: Upon the approval by the defendant of the preliminary studies and sketches, a sum equivalent to 1½ per cent. upon the estimated cost of the building; upon the completion of the original drawings and specifications, a further sum of 2½ per cent.; upon the completion of the detailed drawings, a further sum of 2 per cent.; and upon the entire completion, a final sum of 1½ per cent. for general supervision.

Plaintiff contends that, acting upon this contract, he prepared the preliminary studies and sketches; that he submitted them to the defendant, and that the latter approved and accepted them; but that the defendant never proceeded with the erection of the house in accordance therewith, and never paid plaintiff anything for his services. Estimating the total cost of the building as completed to be $150,765, plaintiff sued for $8,293.65, as the damages caused by the breach, and recovered a verdict of $5,002.65.

The defendant denied that any contract had been made, but averred that, at the plaintiff's solicitation, he allowed him to make sketches for a proposed residence, upon defendant's written agreement that, if defendant would give the plaintiff a trial, the former would be under no obligation to the latter until such sketches had met with the defendant's approval, and that, should plaintiff's services at any time before such approval prove in any way unsatisfactory, he would retire as architect, with claim of no kind whatsoever for services, upon the return to him of the sketches. The defendant further claimed that plaintiff's services were limited to the making of certain pencil sketches and drawings, that they were performed entirely within the terms of the letter hereinafter set forth, and that no further services were rendered by the plaintiff.

There was produced a letter, whose authenticity is not questioned, and which reads as follows:

Abner J. Haydel, 156 Fifth Ave.

New York, June 3, 1904.

Dear Mr. Gould: After making various sketches for your proposed residence, I really feel that, at best, it is merely guessing at what you desire, and consequently I beg to suggest that in order that I might give you a house that will suit your taste and requirements that we go over the premises more fully and then try various sketches in line with your ideas, and if you will kindly give me such a trial, I hereby agree that in no way will you be under

obligation to me till the said sketches meet your approval, and should at any time before said approval I become in any way unsatisfactory, I will retire, on return to me of all the sketches, without claim on you for such services performed.

Hoping I may be given the desired opportunity, I am

Very truly yours, °    Abner J. Haydel.

To Mr. Charles A. Gould, 1 West 34th Street.

It was defendant's contention that this letter contained the full agreement of the parties, while plaintiff urged it was but a portion of the entire agreement. Defendant denies that he ever accepted or approved the sketches furnished, as he claims, in accordance with this letter. There were, then, two issues presented for the consideration of the jury: (1) The terms of the agreement between the plaintiff and defendant; (2) the acceptance or rejection of the preliminary sketches.

During the course of the trial, certain exhibits were received in evidence which were outside of any issue in the case, and the reception of which was undoubtedly prejudicial to defendant. The questions submitted depended for their determination upon the view which the jury might take of the relative weight to be given to the testimony of the plaintiff and the defendant, who were the sole witnesses both to the making of the contract and to the disposition made of the plans. The terms of the original agreement were of the utmost importance, and plaintiff by his complaint had set forth at length what he claimed them to be. There was offered in evidence an article published in the Scientific American, describing a building theretofore erected at Newport, R. I. by plaintiff, together with an editorial in the same issue favorably commenting upon the plaintiff's professional services in connection therewith. Objection was made to the receipt of this paper, the sole connection of which with the defendant was to be found in plaintiff's testimony that he had shown this paper to defendant, having brought it with him, because it contained practically all the photographs of Gray Crag, which he had previously shown him; that plaintiff talked over the article with the defendant; that defendant looked over the plans; and that plaintiff thought that defendant looked over the printed editorial matter in regard to Gray Crag. Plaintiff's counsel contended that, if defendant read the editorial and commented upon it, the same was made a part of the contract between them. Upon this statement, the entire paper was received in evidence.

It is obvious that this was error, for it was not the plaintiff's contention that he was employed to make plans and sketches of a building which should be identical with or conform to those of Gray Crag; on the contrary, he admits that his undertaking was to furnish sketches which should be satisfactory to and approved by the defendant. Therefore the plans of Gray Crag could have no possible bearing upon this controversy, nor could the editorial be admitted in evidence from any point of view. It was what the plaintiff himself characterized it, "a little puff for myself." Appearing in a well-known paper, its effect was doubtless to fortify the plaintiff's position by indirectly vouching for his professional skill. It may be said that later in the trial the claim was abandoned by plaintiff that this editorial was

any part of the contract, although it had been received in evidence upon that theory.

It was error as well to receive in evidence two letters, plaintiff's Exhibits Nos. 16 and 17, which are simply self-serving declarations, having no bearing upon any issue in the case, and whose sole effect would be to demonstrate plaintiff's willingness to do anything within reason to meet defendant's views or to amicably settle the matters in controversy.

Judgment and order appealed from reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.